**EXHIBIT "A"**
**ROSLEE HAMILTON**
**SUMMONS AND VERIFIED COMPLAINT**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------------------------------------------X

ROSLEE HAMILTON, an infant under the age of 14 years by
her father and natural guardian FABIAN McCALLA and
FABIAN McCALLA,

                Plaintiff(s),

        -against-

CITY OF MOUNT VERNON , THE MOUNT VERNON
POLICE DEPARTMENT and POLICE OFFICERS
"JOHN DOE", "RICHARD ROE", fictitious names, true names
unknown,

                Defendant(s).


------------------------------------------------------------------------X

Index No.:

Plaintiff designates
Westchester County as
the place of trial.

The basis of venue is:
Place of Occurrence

## SUMMONS

Plaintiffs reside at:
58 South 14th Avenue
Mt. Vernon, New York
10550

County of Westchester

## To the above named Defendants:

      **You are hereby summoned** to answer the complaint in this action, and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance
on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day
of service, where service is made by delivery upon you personally within the state, or, within 30 days
after completion of service where service is made in any other manner.  In case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated:          Uniondale, NY
              _12-5-07_

                             DELL & LITTLE, LLP
                             Attorneys for Plaintiff(s)
                             By:_____
                             JOSEPH G. DELL
                             1274 RexCorp Plaza
                             Uniondale, NY 11556
                             (516) 294-5814

TO:   CITY OF MOUNT VERNON
      Room 104

City Hall
One Roosevelt Square
Mt. Vernon, New York 10550

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
ROSLEE HAMILTON, an infant under the age of 14    Index No.:
years by her father and natural guardian FABIAN
McCALLA and FABIAN McCALLA,    **VERIFIED COMPLAINT**

Plaintiff(s),

-against-

CITY OF MOUNT VERNON , THE MOUNT VERNON
POLICE DEPARTMENT and POLICE OFFICERS
"JOHN DOE", "RICHARD ROE", fictitious names, true
names unknown,

Defendant(s).


-------------------------------------------------------------------X


Plaintiffs, by their attorneys, **DELL & LITTLE, LLP**, complaining of the Defendants,

respectfully alleges, upon information and belief, as follows:


## AS AND FOR A FIRST CAUSE OF ACTION

1.    At all times herein mentioned, Plaintiffs were, at the time of the incident, residents

of the County of Westchester, State of New York.

2.    That on December 15, 2006, and at all times mentioned herein, Defendant **CITY OF**

**MOUNT VERNON** was and is a municipal corporation duly organized and existing under and by

virtue of the laws of the City and State of New York.

3.    That on December 15, 2006, and at all times mentioned herein, Defendant **CITY**

**OF MOUNT VERNON POLICE DEPARTMENT** was and is a municipal corporation or other legal entity duly organized and existing under and by virtue of the General Municipal Laws of the City and State of New York.

4.     That prior hereto, on January 18, 2007, and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiffs' demands for adjustment thereof was duly served on the Plaintiffs' behalf on the Defendants and that thereafter said Defendants refused or neglected for more than thirty (30) days, and up to the commencement of this action, to make any adjustment or payment thereof, and that thereafter, and within the time provided by law, this action was commenced.

5.     That  pursuant to General Municipal Law 50(h), a hearing has not been held.

6.     That this action is being commenced within one year and ninety days after accrual of this cause of action, or within the time allowed by law.

7     That on December 15, 2006, and at all times mentioned herein, there existed a premises located at 58 South 14th Avenue, Mt. Vernon, County of Westchester, State of New York, wherein the Plaintiffs resided.

8.     That on, December 15, 2006 and at all times mentioned herein, Defendant **CITY OF MOUNT VERNON POLICE DEPARTMENT** was acting as an agent of the **CITY OF MOUNT VERNON.**

9.     That on, December 15, 2006 the Plaintiffs **ROSLEE HAMILTON**, an infant and Plaintiff, **FABIAN McCALLA** were lawfully present in their residence at the aforementioned premises.

2

10.    That on December 15, 2006, while Plaintiffs were lawfully present at the aforesaid location, they was caused to be severely injured and traumatized when members of the **CITY OF MOUNT VERNON POLICE DEPARTMENT** physically assaulted, falsely arrested, racially discriminated against and detained Plaintiffs after breaking down their apartment doors and ransacking their residence.

11.    At all times hereinafter mentioned, Defendants, were under the duty to train, supervise, control and employ their employees in a reasonably prudent and careful manner and that the Defendants had a duty to protect and keep safe all persons and the defendants breached that duty by participating and assisting in the negligent, reckless, careless and intentional, harmful, racially discriminatory and offensive contact with the person of the Plaintiffs; in assaulting and  falsely arresting and detaining Plaintiffs, in failing to prevent the activities that caused Plaintiffs to be assaulted, arrested and detained; and in participating and assisting in the negligent, reckless, careless and intentional, harmful, offensive contact with the persons of the Plaintiffs and their place of residence.

12.    That the incidents and damages alleged in this action resulted from the negligence and carelessness of the Defendants, in the training, supervision, and management of the police officers under their control at the time of the incident.

13.    That the aforementioned incident was wrongful, unjustifiable and unlawful and without any fault or negligence on the part of the Plaintiffs.

14.    That as a result of the foregoing, Plaintiffs were caused serious and catastrophic personal and traumatic injuries and have been otherwise injured.

15.    That the aforesaid occurrence, and the results thereof, were in no way caused by

3

any carelessness or negligence on the part of the Plaintiffs, but were due solely and wholly to the joint, several and/or concurrent negligence of the Defendants, their agents, servants, employees and/or licensees in wrongfully and unlawfully causing, allowing and/or permitting said assault on the Plaintiffs; and in being otherwise careless, reckless and negligent.

16.     That Defendants were careless, reckless and grossly negligent in the operation, management, maintenance, supervision, use and control of the aforesaid police officer and the Defendants were otherwise negligent, careless, reckless, negligent and grossly negligent in the premises.

17.     That as a result of the foregoing, the Plaintiffs were caused to sustain severe and permanent injuries, have suffered and will continue to suffer great pain, shock, trauma and mental anguish, have incurred, and will continue to incur, expenses for medical care and treatment, and was, and will continue to be, unable to attend to their normal duties and pursuits with a resultant loss thereby.

18.     By reason of the foregoing, Plaintiff have been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction herein.

### AS AND FOR A SECOND CAUSE OF ACTION
### AS TO 42 U.S.C. §1983 CONSPIRACY

19.     Paragraphs 1 through 18 are incorporated by reference as through fully set forth.

20.     The individual Defendants, under color of law, conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten and intimidate Plaintiffs in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to them by the Constitution, including the rights: to be free from the

4

intentional use of unreasonable force; to be free from cruel and unusual punishment as one in the custody of the Defendants; to have access to and seek redress in the Courts; and to be free from the delay and denial of medical attention; to be free from unnecessary and wanton infliction of pain; and to not be deprived of life without due process of law.

21.    It was part of the conspiracy that the Defendant **CITY OF MOUNT VERNON** aided by the Defendant, **CITY OF MOUNT VERNON POLICE DEPARTMENT**, did, among other acts, physically abuse the Plaintiffs, causing serious, traumatic injuries.

22.    As a direct and proximate result, Plaintiffs suffered the traumatic injuries and damages described above.

### AS AND FOR A THIRD CAUSE OF ACTION
### AS TO 42 U.S.C. §1983 UNREASONABLE & EXCESSIVE FORCE & CRUEL & UNUSUAL PUNISHMENT

23.    Paragraphs 1 through 22 are incorporated by reference as through fully set forth.

24.    By their conduct, Defendants' deputies and non-uniform personnel and supervisory personnel, under color of law, deprived Plaintiffs of their constitutional right to be free from excessive and unreasonable force.

25.    By their conduct and under color of law, Defendants' deputies and non-uniform personnel and supervisory and supervisory personnel, deprived Plaintiffs of their constitutional right to be free from cruel and unusual punishment as persons in their custody.

26.    As a direct and proximate result, Plaintiffs suffered the traumatic injuries and damages described above.

5

## AS AND FOR A FOURTH CAUSE OF ACTION
## AS TO 42 U.S.C. §1983 FIRST, FOURTH, FIFTH, NINTH, FOURTEENTH AMENDMENTS & PRIVACY VIOLATIONS

27.     Paragraphs 1 through 26 are incorporated by reference as through fully set forth.

28.     By their conduct and under color of law, Defendants' deputies and non-uniform personnel and supervisory and supervisory personnel, deprived Plaintiffs of their First, Amendment right to have access to and seek redress in the courts.

29.     The Defendants' conduct interfered with the federally protected liberty and privacy interest of the Plaintiffs to maintain a stable family relationship free of intervention from the State.

30.     As a direct and proximate result, Plaintiffs suffered the traumatic injuries and damages described above.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AS TO 42 U.S.C. §1983 - MONELL CLAIM

31.     Paragraphs 1 through 30 are incorporated by reference as through fully set forth.

32.     Prior to December 15, 2006, Defendants, **CITY OF MOUNT VERNON POLICE DEPARTMENT** and **CITY OF MOUNT VERNON**, developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Plaintiffs' rights.

33.     Prior to December 15, 2006, Defendants, **CITY OF MOUNT VERNON POLICE DEPARTMENT** and **CITY OF MOUNT VERNON**, maintained polices and procedures that encouraged the practice of using excessive force.

34.     The Defendants, **CITY OF MOUNT VERNON POLICE DEPARTMENT** and

6

**CITY OF MOUNT VERNON,** have been deliberately indifferent to the need for more or different training, rules and regulations to prevent the use of excessive force.

35. Acts of excessive force against Plaintiffs in Defendants' care and custody were tolerated by the Defendants who substantially failed to investigate, deliberate and discipline appropriately personnel who engaged in such conduct.

36. The Defendants, prior to and at the time of this incident, were aware of the need for more or different training, rules, regulations, investigation and discipline relating to Defendants' deputies and non-uniform personnel and supervisors.


## AS AND FOR A SIXTH CAUSE OF ACTION
## AS TO PENDENT CLAIM FOR GROSS NEGLIGENCE & NEGLIGENCE

37. Paragraphs 1 through 36 are incorporated by reference as through fully set forth.

38. By reason of the foregoing, Defendants are liable to Plaintiffs for negligent and grossly negligent screening, hiring, training, discipline and retention of Defendants' deputies and non-uniform personnel and supervisory personnel.

39. As a consequence, Plaintiffs suffered damages.


## AS AND FOR A SEVENTH CAUSE OF ACTION
## AS TO PENDENT CLAIMS OF INTENTIONAL & NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS

40. Paragraphs 1 through 39 are incorporated by reference as through fully set forth.

41. By causing Plaintiffs to suffer severe and serious physical and mental injuries,

7

Defendants' deputies and non-uniform personnel and supervisory personnel, embarked on a malicious, willful and grossly negligent course of conduct intended to cause Plaintiffs to suffer extreme mental and emotional distress, agony and anxiety.

42.    The aforesaid acts of intentional and reckless infliction of emotional and mental distress by Defendants constitute misconduct of an egregious nature that exceeds all bounds usually tolerated by a civilized society.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## AS TO PENDENT CLAIM OF PRIMA FACIE TORT

43.    Paragraphs 1 through 42 are incorporated by reference as through fully set forth.

44.    By their actions, et forth above, Defendants' deputies and non-uniform personnel and supervisory personnel, inflicted harm upon Plaintiffs without excuse or justification, out of disinterested malevolence.

**WHEREFORE**, Plaintiffs pray for judgment against the defendants on all Causes of Action in amounts which exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction herein, together with the costs and disbursements of this action.

Dated: Uniondale, New York
     12 - 5 -    , 2007

            Yours, etc.,

            DELL & LITTLE, LLP
            Attorneys for Plaintiff(s)
            By:
            JOSEPH G. DELL
            1274 RexCorp Plaza

8

Uniondale, NY 11556
(516) 294-5814

## ATTORNEY'S VERIFICATION

**JOSEPH G. DELL,** an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am an attorney at **DELL & LITTLE, LLP,** attorneys of record for Plaintiff(s),

I have read the annexed

## COMPLAINT

and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

The reason this verification is made by me and not Plaintiff(s) is that Plaintiff(s) is/are not presently in the county wherein the attorneys for the plaintiff(s) maintain their offices.

DATED:    Uniondale, NY
_12-5-_ , 2007

JOSEPH G. DELL

10

Index No.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

ROSLEE HAMILTON, an infant under the age of 14 years by her father and natural
guardian FABIAN McCALLA and FABIAN McCALLA,

                    Plaintiff(s),

            -against-

CITY OF MOUNT VERNON , THE MOUNT VERNON
POLICE DEPARTMENT and POLICE OFFICERS
"JOHN DOE", "RICHARD ROE", fictitious names, true names unknown,

                 Defendant(s).

## SUMMONS & COMPLAINT

## DELL & LITTLE, LLP
*Attorneys for Plaintiff(s)*
**1274 RexCorp Plaza**
**Uniondale, New York 11556**
**(516) 294-5814**

TO:

**EXHIBIT "B"**
**DOCKET NO. 08CV00083**
**ROSLEE HAMILTON**
**AMENDED NOTICE OF CLAIM**

## AMENDED NOTICE OF CLAIM

-------------------------------------------X

In the Matter of the Claim of

**ROSLEE HAMILTON, an infant under the age
of 14 year by her father and natural guardian
FABIAN McCALLA and FABIAN McCALLA,**

- against -

**THE CITY OF MT. VERNON,**

-------------------------------------------X

SERVED ON:

BY:

TO:     City of Mt. Vernon, City Clerk, Room 104, City Hall, Mount Vernon, New York 10550

PLEASE TAKE NOTICE that the undersigned claimant hereby makes claim and demands
against you as follows:

1. **Name and post office address of each claimant and claimants' attorneys is**:

**Claimant**
ROSLEE HAMILTON, Infant
58 South 14th Avenue
Mt. Vernon, NY 10550

FABIAN McCALLA f/n/g
58 South 14th Avenue
Mt. Vernon, NY 10550

**Attorney**
DELL & LITTLE, LLP
1274 Reckson Plaza
Uniondale, New York 11556
(516) 294-5814

2. **Nature of Claim:** The nature of the claim is for severe and permanent personal injuries sustained
by infant ROSLEE HAMILTON and Claimant FABIAN McCALLA, loss of services, society and
companionship sustained by FABIAN McCALLA parent and natural guardian of infant ROSLEE
HAMILTON, and all other damages allowed by statute and case law as a result of the negligence,
carelessness, recklessness and gross negligence of CITY OF MT. VERNON, their agents, servants
and/or employees, departments, agencies and those acting under their directions behest and control
in the operation, management, control and supervision of its Police Department and Officers involved
in a Police raid at Claimants' residence.

3. **The time when, the place where and the manner in which the claim arose:**  Said claim arose
on December 15, 2006, at approximately 5:00 a.m. in the Claimants' apartment of 58 South 14th
Avenue, Mt. Vernon, New York, State of New York when a number of Police Officers converged
on the apartment with an arrest warrant for an individual named "J", who did not reside at the
premises and was not know to the Claimants.  The Police Officers broke down several doors, held
their drawn weapons on the Infant-Claimant, handcuffed claimant FABIAN McCALLA and placed
him on the floor, continued to ransack the apartment causing serious property damage to the
apartment.  The Officers in charge of said activity had lost control and/or failed to prevent the
activities that caused the claimants to be falsely detained, arrested and harassed. THE CITY OF MT.
VERNON, their agents, servants and/or employees, departments, agencies and those acting under
their directions behest and control, were negligent in their failure to properly investigate and/or
evaluate the results of any investigation of those persons, agents, servants and/or employees hired to
operate, control, supervise, said Police raid; in failing to properly investigate circumstances which

initiated the errant arrest warrant which resulted in the false arrest, detainment and harassment of the Claimants herein; in failing to hire efficient and/or sufficient personnel in connection with the operation, management, control, and/or supervision of said operation and serving of errant arrest warrant; in failing to train their employees so as to enable them to control themselves and/or persons in their charge; in failing to adequately train their employees so as to enable them to control the operation; in failing to properly and/or adequately supervise the activities which caused claimants to be falsely detained, arrested and harassed; in failing to properly and/or adequately monitor and/or supervise the activities and issuance of the arrest warrant on the day of the incident; in failing to properly and/or adequately screen the participants of the activity involved herein; in failing to adequately and/or properly categorize the participants in the activity involved herein; in failing to prevent and/or stop inappropriate activity in the premises; in failing to prevent said activity, in failing to stop said activity, and the respondent was otherwise negligent, careless, reckless, and grossly negligent in the premises.

4. Infant-Claimant, ROSLEE HAMILTON and Claimant FABIAN McCALLA, sustained severe permanent emotional distress and trauma, the full extent of which is not presently known. Claimant FABIAN McCALLA sustained loss of services and society of his said child, ROSLEE HAMILTON, as a result of the trauma and emotional distress. Claims are being made for personal injuries, hospital, physician and other medical expenses, pain and suffering, loss of quality and/or enjoyment of life, loss of services companionship and society and all other damages to which claimants are entitled to by case law and statute.

       Said claims and demands are hereby presented for adjustment and payment. You are hereby notified that unless they are adjusted and paid within the time provided by law from the date of presentation to you, the claimants intend to commence an action in these claims. By reason of the foregoing, plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction herein.

Dated:      Uniondale, New York
           January 2_, 2007

## VERIFICATION

STATE OF NEW YORK

COUNTY OF NASSAU } ss.: 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

FABIAN McCALLA, being duly sworn, deposes and says that deponent is the above-named claimant; deponent has read the foregoing NOTICE OF CLAIM and know its contents; the same is true to deponent's knowledge, except as to those matters stated to be alleged upon information and belief, and as to those matters deponent believes it to be true.

_____
FABIAN McCALLA

Sworn to before me this
23 day of January, 2007.

STEPHANIS G. OVADIA
NASSAU COUNTY
COMM EXP. Sep 30, 2009
02 OV4835446

_____
Notary Public

**DELL & LITTLE, LLP**
Attorneys for Claimants
Infant-Claimant, ROSLEE HAMILTON and Claimant FABIAN McCALLA,
1274 Reckson Plaza
Uniondale, New York 11556
(516) 294-5814

**EXHIBIT "C"**
**DOCKET NO. 08CV00080 & 08CV00083**
**AFFIDAVIT FOR A SEARCH WARRANT**

CITY COURT OF MOUNT VERNON
COUNTY OF WESTCHESTER
STATE OF NEW YORK
-----------------------------------------------------------------------------------------------X

IN THE MATTER OF THE APPLICATION OF: P.O. Smith # 2085 of the Mt. Vernon Police Department

FOR A WARRANT OF SEARCH FOR THE PREMISES:

FOR A WARRANT OF SEARCH AND SEIZURE FOR THE FOLLOWING PERSONS and PREMISES
131 VISTA PL. 3RD FLOOR
58 SOUTH 14TH AVE
Name: "Ghetto"
Hgt:5'8"
Build: medium build
Complexion: medium

NAME: "J"
Hgt: 5'6"
Build: Medium
Complexion: Medium
And any individuals in the premises at time of warrant execution.
-----------------------------------------------------------------------------------------------X

CITY COURT OF MOUNT VERNON
COUNTY OF WESTCHESTER
STATE OF NEW YORK

**AFFIDAVIT FOR A SEARCH WARRANT**

    P.O. Smith #2085  being duly sworn, deposes and states; I am attempting to secure evidence of a violation of New York Penal Law, Section; 221.00/265.00

    I am a police officer employed by the Mount Vernon Police Department, Mount Vernon, New York, and I am making this affidavit in support of my application for a search warrant for the above captioned person and Premises. The allegations of fact set forth herein are based upon reliable information and Police Investigation. The sources of my information and basis of my beliefs are C.I. information.

    I am a Police Officer and have been for approximately three (3) years. I have been assigned to the Narcotics Unit for approx. 3 months. During my career I have been involved in over 150 narcotic related arrests. I have also participated in the execution of over 10 Search Warrants.

    On December 13,2006 in the evening hours the confidential informant who will be refereed to as 47983-06, was arrested on an unrelated charge. During a debriefing conducted by the intelligence unit, CI 47983-06 provided information of drug activity at locations that were currently under investigation by this department. which proved his reliability and credibility regarding illegal activity. CI 47983-06 further stated that a male known to him/her as "ghetto" described as a male black brown skinned with braided hair, sold marijuana to he/she on several occasions out of his third floor apartment located at 131 Vista Place. CI 47983-06 stated that the last time that he/she was in

"ghetto's" apartment, was on 12/06/2006. While in the apartment he/she observed "ghetto" with a loaded automatic handgun black in color with a wooden handle. The CI observed him put the gun on the kitchen counter above the kitchen sink. CI 47983-06 further stated while with "Ghetto" on 12/08/2006 in evening hours, the CI and "ghetto" went to 58 S 14th Ave to purchase marijuana. While in the premises C1 47983-06 stated that he/she bought thirty dollars worth of marijuana from a male black about 5'6" in height who goes by the name of "J". The CI stated while in the premises he/she observed two loaded handguns set on the living room coffee table. One of the handguns observed was described as being a silver revolver. The other firearm was described as black 45 semi automatic handgun. The CI continued to state that Ghetto is known to drive a gold Nissan Maxima 4 door. "Ghetto" was observed by the CI on several occasions selling marijuana from same said vehicle, and has also observed the handgun in said vehicle.

I am requesting that the Search Warrant be granted for the above descibed Premises, and the persons described above. I am also requesting that the Search Warrant include all persons who are found in said premises at the time of the execution of this Search Warrant due to the confidential source's information that at any given time there are a number of parties inside said premises processing narcotics and in possession of a firearm.

I am asking to confiscate any firearm, bullets and or marijuana in any form found along with paraphernalia found associated with the sale of marijuana including scales, cutting agents, packaging materials such as paper bundles, and plastic bags, scotch tape, measuring spoons, telephone pagers, cell phones, computers, computer disks, coin bags, balloons, rolling paper and U.S. Currency, and other paraphernalia found and associated with the use of cocaine including scissors and homemade pipes documentary evidence found of sales of illicit drugs, including lists of buyers and sellers, pay/owe sheets, IOU's, and price lists. And any and all items associated with firearms.

Indicia in the form of personal property including, identification, cancelled mail envelopes, photo's, keys, utility bills, all of which tend to prove the identity of the persons in possession of any of the above items that are found or which tend to prove the knowledge of such persons of the Contraband nature of the items found.

I am requesting that the Search Warrant be executable, at any time day or night without any prior notice due to the fact that the marijuana can easily be destroyed.

Based upon my experience as a narcotics investigator and my converstaions with the confidential source, as well as his ties with both of the suspects, it is my belief that the source's safety would be jeopardized if his identity were revealed, therefore it is requested that this affidavit remain sealed until further order of this court.

Based on the foregoing, there is probable cause to believe that a search of the captioned premises will reveal the presence of certain property, of kind and character described in Criminal Procedure Law, Section 690.10

To your deponent's knowledge, no similar application for the relief sought herein has

been made.

**COURT ENDORSEMENT:**
Sufficient proof having been given under oath that said property may be easily and quickly destroyed or disposed of; the executing officer is not required to give notice of his authority nor his purpose prior to executing the order. You are there fore commanded, at any time day or night, without first announcing your purpose or authority to make a search of the above listed premises, persons, for marijuana and firearms as described in PL. sections 221.00/265.00

Wherefore, it is respectfully requested that the Court issue a warrant and order of seizure in the annexed form authorizing the search of the:

PREMISES: 131 Vista Pl. 3rd floor
58 S 14th Ave

Sworn to before me this 14th
December, 2006.

Mount Vernon Police Department
Mount Vernon, New York

City Judge-City of Mount Vernon
County of Westchester
State of New York

**EXHIBIT "D"**
**DOCKET NOS. 08CV00080 & 08CV00083**
**WARRANT ORDER**

CITY COURT OF MOUNT VERNON                      *ORDER*
COUNTY OF WESTCHESTER
STATE OF NEW YORK
------------------------------------------------------------------------------------------------X

IN THE MATTER OF THE APPLICATION OF Detective Christopher DiMase#168
FOR A WARRANT OF SEARCH AND SEIZURE FOR THE FOLLOWING PREMISES

58 S 14th Ave
Mount Vernon N.Y. 10550

FOR A WARRANT OF SEARCH AND SEIZURE FOR THE FOLLOWING PERSONS
   "J"
Male Black
Hgt: 5'6
Build: medium
Complexion: medium

And any individuals on the premises at the time of warrant execution.
------------------------------------------------------------------------------------------------X
IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO: ANY POLICE OFFICER OF THE MOUNT VERNON POLICE DEPARTMENT


            Proof by affidavit having been made before me this day by Detective Christopher DiMase#168
of the Mount Vernon Police Department, Mount Vernon, New York, that there is reasonable cause to believe
that certain property of a kind and character described in Criminal Procedure Law, Section 690.10.

            TO WIT: Property, which constitutes evidence and tends to demonstrate that an offense was
committed and that a particular person participated in the commission of an offense at 58 S 14th Ave Possession
of a Weapon and Marijuana.

            You are therefore commanded, at any time day or night, without first announcing your purpose
or authority to make a search of the above listed Premises, Person(s) for Weapons and Marijuana as described in
Penal Law Sections 220.00

            Paraphernalia found associated with the sale of Marijuana, including scales, cutting agents,
packaging materials such as paper bundles and plastic bags, scotch tape, measuring spoons, telephone pagers,
cell phones, computers, computer discs, video cameras, video tapes, coin bags, balloons, rolling paper and U.S.
Currency and other paraphernalia found in associated with the use of marijuana including scissors and
homemade pipes documentary evidence found of sales of illicit drugs, including list of buyers and sellers,
pay/owe sheets, IOU's, and price lists, and any and all items associated with firearms.

            Indicia found in the form of personal property including, identification, canceled mail
envelopes, photos, keys, utility bills, all which tend to prove the identity of the persons in possession of any of
the above items that are found or which tend to prove the knowledge of such persons of the contraband nature of
the items found.

            Any property seized pursuant to this warrant shall be returned without this warrant to the court
without unnecessary delay.

COURT ENDORSEMENT:

            Sufficient proof having been given under oath that said property may be easily and quickly
destroyed or disposed of; the executing officer is not required to give notice of his authority nor his
purpose prior to executing this order.

Dated 12/14 _____ 2006

_____
City Judge, City of Mount Vernon
County of Westchester
State of New York

**EXHIBIT "F"**
**DOCKET NO. 08CV00083**
**FABIAN MCCALLA**
**50-H TRANSCIPT**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
ELIZABETH LYNCH, SIMON LYNCH, ERIC LYNCH,
INFANTS, UNDER THE AGE OF 14, BY THEIR
MOTHER AND NATURAL GUARDIAN JESSICA LYNCH
AND JESSICA LYNCH INDIVIDUALLY AND
RICARDO LYNCH,

     Plaintiffs,

    -against-   08 CIV 00080

CITY OF MOUNT VERNON, THE MOUNT VERNON
POLICE DEPARTMENT AND POLICE OFFICERS
"JOHN DOE", "RICHARD DOE", FICTITIOUS
NAMES, TRUE NAMES UNKNOWN,

     Defendants.

- - - - - - - - - - - - - - - - - - - - X

HELD AT:    Mount Vernon City Hall
       One Roosevelt Square
       Mount Vernon, New York 10550
       January 14, 2008
       1:45 p.m.


    Examination before Trial of the

Plaintiff, FABIAN McCALLA, pursuant to Court

Order, held at the above time and place

before a Notary Public of the State of New

York.


    J & L REPORTING SERVICE
     of Westchester, Inc.
     200 East Post Road
   White Plains, New York 10601
     (914) 682-1888
    Lisa Dobbo, Reporter

2

A P P E A R A N C E S:


                        DELL & LITTLE, ESQUIRES
                        Attorneys for the Plaintiffs
                        Office & Post Office Address
                        1274 Reckson Place
                        Uniondale, New York 11556
                        BY:  STEPHANIE G. OVADIA,
                             ESQUIRE



                        CORPORATION COUNSEL
                        MOUNT VERNON
                        Attorneys for the Defendant
                        Office & Post Office Address
                        Mount Vernon City Hall
                        One Roosevelt Square
                        Mount Vernon, New York 10550
                        BY:  HINA SHERWANI, ESQUIRE



A L S O    P R E S E N T:


                        Jessica Lynch

3

IT IS HEREBY STIPULATED AND AGREED, by and between the attorneys for the respective parties herein, that the sealing and filing of the within deposition be waived; that such deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the officer before whom said deposition is taken.

IT IS FURTHER STIPULATED AND AGREED, that all objections, except as to form, are reserved to the time of trial.

```
1                        F. McCALLA                4

2                    FABIAN McCALLA, residing at 58

3                    South 14th Avenue, Mount

4                    Vernon, New York 10550, having

5                    been duly sworn by Notary

6                    Public, Lisa Dobbo, testified

7                    as follows:

8        EXAMINATION BY MS. SHERWANI:

9            Q.    Please state your full name for

10       the record.

11           A.    Fabian McCalla.

12           Q.    Please state your address for

13       the record.

14           A.    58 South 14th Avenue, Mount

15       Vernon, New York 10550.

16           Q.    Mr. McCalla, you were here for

17       the testimony of Ms. Lynch; is that correct?

18           A.    Yes.

19           Q.    I gave some instructions in the

20       beginning that we'll just go over.

21           If you don't understand my question

22       or don't hear my question, please let me

23       know --

24           A.    Yes.

25           Q.    -- and I'll ask it again.
```

```
 1                              F. McCALLA                    5

 2              A.    Okay.

 3              Q.    Please use words.

 4              A.    Yes.

 5              Q.    Don't use "uh-huh" or gestures

 6      and just wait until I finish my question to

 7      begin your answer because our reporter can

 8      only take down one person.

 9              A.    Yes.

10              Q.    Sir, do you work?

11              A.    Yes, I do.

12              Q.    Where do you work?

13              A.    Wartburg Home.

14              Q.    What do you do?

15              A.    Environmental technician.

16              Q.    What are your hours?

17              A.    8:00 to 4:00.

18              Q.    How long have you worked there?

19              A.    I've been there like nine

20      years.

21              Q.    Do you have any other jobs?

22              A.    No, I don't.

23              Q.    What's the highest education

24      that you completed?

25              A.    Third form in high school.
```

```
1                          F. McCALLA                    6
2              Q.    Where was that?
3              A.    That's in Jamaica, West Indies.
4              Q.    When did you come to New York?
5              A.    1989.
6              Q.    Since 1989, did you get any
7     training or go to any school here?
8              A.    Yes, I did.
9              Q.    Where was that?
10             A.    That was in the Bronx.  I'm
11    trying to remember the name.
12                   MS. OVADIA:  You can leave a
13             blank and we'll provide it.
14             A.    _____.
15             Q.    Are you currently married?
16             A.    No, I'm not.
17             Q.    Do you know Alethia Hamilton?
18             A.    Yes, I do.
19             Q.    How do you know her?
20             A.    That's my baby mom.
21             Q.    How old is your oldest child?
22             A.    Oldest is fourteen years.
23             Q.    Alethia is the mom?
24             A.    Yes, she is.
25             Q.    How many other children do you
```

```
1                              F. McCALLA                    7

2          have together?

3                    A.      Three, three other.

4                    Q.      So, four altogether?

5                    A.      Four altogether.

6                    Q.      What is your fourteen year

7          old's name?

8                    A.      Rosalie Hamilton.

9                    Q.      And the others?

10                   A.      Anthony McCalla, Alex McCalla

11         and Rhiana McCalla.

12                   Q.      How old is Anthony now?

13                   A.      Anthony is twelve years.

14                   Q.      And Alex?

15                   A.      Alex is eight years.

16                   Q.      Rhiana?

17                   A.      Five years.

18                   Q.      A year before this incident,

19         did you personally know anyone that was

20         arrested by the Mount Vernon Police

21         Department --

22                   A.      No, I didn't.

23                   Q.      -- either anyone that you

24         worked with or anyone that you socialized

25         with that was arrested by the Mount Vernon
```

1                              F. McCALLA                    8

2            Police Department in the year before this

3            incident?

4                    A.    Not that I know of, no.

5                    Q.    Describe for me how you first

6            learned that there was police presence at

7            the house at 58 South 14th?

8                    A.    I was in bed at the time

9            sleeping.  I heard doors bursting down, see

10           guns.

11                   Q.    Did you see the officers?

12                   A.    Yes, I did.

13                   Q.    How many officers were there on

14           your floor?

15                   A.    There was six or seven

16           officers.

17                   Q.    What did they proceed to do?

18                   A.    They proceeded -- came in

19           waiving guns, handcuffed me on the bed and

20           was there searching the place.

21                   Q.    Did they tell you what they

22           were looking for?

23                   A.    No, they did not.

24                   Q.    Did they ask for you by name?

25                   A.    No.

1                          F. McCALLA                        9

2              Q.    Did they ever refer to you as

3    Mr. McCalla?

4              A.    No, they did not.

5              Q.    I'm going to show you

6    Defendant's C.

7                         (Handed)

8              Q.    Is that you in the picture,

9    sir?

10             A.    Yes.

11             Q.    Who else is in that picture?

12             A.    That's my baby mom's sister

13   Karina, her daughter Jackie, my daughter

14   Rosalie, Jahmarcus, her son.

15             Q.    Rosalie is wearing the striped

16   shirt?

17             A.    Yes.

18             Q.    There's a photograph on the

19   wall.

20             Do you know who that is a photograph

21   of?

22             A.    Yeah, that's my two sons.

23             Q.    This is the second floor --

24             A.    Second floor.

25             Q.    -- of the house?

```
 1                              F. McCALLA                    10

 2              A.      Yes.

 3              Q.      And you're still living there?

 4              A.      Yes.

 5              Q.      When did you first move there?

 6              A.      I was there from like '90.

 7              Q.      1990?

 8              A.      Yeah.

 9              Q.      Does anyone live on the third

10      floor?

11              A.      There is no third floor.

12              Q.      There is no third floor, sorry.

13              When Ms. Lynch moved out for the six,

14      seven months from the basement, did anyone

15      else move in?

16              A.      No, no one.

17              Q.      Did any of the sisters or

18      brothers live in the basement while she

19      wasn't there?

20              A.      No.

21              Q.      How long of a period of time

22      did the police officers stay on the second

23      floor?

24              A.      They was there from like 5:00

25      until like after 8:00 in the morning.
```

F. McCALLA                    11

Q.    During those hours, describe
for me what they did.

A.    Came in waiving the gun,
handcuffed me on the bed and searching the
place.

Q.    How many were searching?

A.    Approximately all.  They were
all over the place.

Q.    Describe the layout of the
floor for me; is there one entrance to the
second floor or more than one?

A.    One entrance.

Q.    As you enter, what do you enter
into?

A.    To the living room.

Q.    Is the living room what's
depicted in Defendant's C?

A.    Yes, it is.

Q.    Did they search the living
room?

A.    No.

Q.    They were searching bedrooms?

A.    Bedrooms, yeah, the attic.

Q.    There's an entrance to the

F. McCALLA                    12

attic from your floor?

        A.    Yes.

        Q.    Where is that entrance?

        A.    Right above the entrance to my bedroom.

        Q.    Is it a pull down staircase?

        A.    Yes, a pull down, yes.

        Q.    Sir, did they handcuff anyone else?

        A.    No, only me.

        Q.    Did they touch you in any other way besides handcuffing you?

        A.    Yes.

        Q.    What did they do?

        A.    After I had the white plastic, I told them it was too tight and he pulled it up, pulled it more.

        Q.    He pulled it more?

        A.    Yes.

        Q.    Then what happened?

        A.    It was squeezing even more.

        Q.    Did they take off the handcuffs before they left?

        A.    Yeah.

F. McCALLA                13

1

2          Q.    Besides telling them that they

3     were tight, the handcuffs, did you say

4     anything else to the officers?

5          A.    No, I did not.

6          Q.    Describe for me -- the picture

7     shows there's a dining area next to the

8     living room.

9          A.    Yes.

10         Q.    Is there any furniture in the

11    dining area?

12         A.    Yes.

13         Q.    What does that consist of?

14         A.    Cabinet, keep glasses and all

15    that, the table.

16         Q.    Did they search the cabinet?

17         A.    No, they did not.

18         Q.    What other rooms are there

19    besides the living room and dining room?

20         A.    My room and another room,

21    sister Karina's room and the room for the

22    kids.

23         Q.    So, there's three bedrooms?

24         A.    Yes.

25         Q.    And the room for the kids that

F. McCALLA                    14

you described, your kids are in there and

Karina's kids, also?

   A. No, my kids.

   Q. Just your kids?

   A. Yes.

   Q. Karina's kids are with her in

her room?

   A. Yes.

   Q. Karina's bedroom in the middle

of the two rooms, like can you describe that

for me?

   A. Actually, it comes right in the

living room to the left.

   Q. Your room and the kids' room

are together?

   A. Not together, no.

   Q. Describe your room for me, what

does it have in it furniture wise, appliance

wise?

   A. Two dressers, a bed, TV stand,

closet.  That's it.

   Q. Did they search that room?

   A. Yes, they did.

   Q. Were things taken out of the

1                            F. McCALLA                    15

2      drawers?

3            A.    Yes, things were taken out on

4      the floor, like that.

5            Q.    Was anything damaged in your

6      room?

7            A.    Yes, the closet doors were

8      broken down, the living room door, my room

9      door.

10           Q.    Was the closet door locked?

11           A.    Yes.

12           Q.    Is there an iron gate to the

13     house at 58?

14           A.    Yes.

15           Q.    Are there pad locks located to

16     the main entrances?

17           A.    No.  Actually, it's just a

18     chain with a lock but it's just -- just put

19     over.  It's not really locked or anything

20     like that.

21           Q.    How many are there?

22           A.    Just one.

23           Q.    Is there anyplace where there

24     are four locks situated?

25           A.    No.

1                          F. McCALLA                16

2              Q.    Did they ask you to open the

3       closet door before they broke it down?

4              A.    No, they did not.

5              Q.    You told me there was a dresser

6       in your room?

7              A.    Yes, two dressers.

8              Q.    How many drawers did the

9       dressers have?

10             A.    One consists of like six and

11      the other five.

12             Q.    What about the kids' room that

13      you described, tell me the furniture that's

14      in the kids' room.

15             A.    They have a dresser inside

16      there -- two dressers, bunk bed, another

17      bed, television, television stand, yeah.

18             Q.    Was anything broken in the

19      kids' room?

20             A.    Just the door to entrance.

21             Q.    Was it locked at the time?

22             A.    Yeah.

23             Q.    But the kids were inside

24      sleeping?

25             A.    Yes, some were sleeping.

```
1                        F. McCALLA              17
2        Rosalie was up because she was getting ready
3        to go to school.
4               Q.    Besides the doors that you
5        described, was anything else broken on the
6        second floor?
7               A.    The attic door, entrance to the
8        attic door.
9               Q.    Was that locked, as well?
10              A.    Yeah.
11              Q.    Describe for me the lock on
12       that door.
13              A.    It's just -- no lock, just pull
14       up.  At the time we had like some because it
15       was kind of -- some screws to close it.
16       They tore it down.
17              Q.    You had it screwed shut,
18       basically?
19              A.    Right.
20              Q.    Did they ask you to go to the
21       station with them after they left --
22              A.    No.
23              Q.    -- as they were leaving?
24              A.    No, they did not.
25              Q.    Did you ever go to the police
```

F. McCALLA                        18

1

2    station?

3              A.    Yes, I did.

4              Q.    When was that?

5              A.    After they left.

6              Q.    What did you do, did you go

7    with Ms. Lynch?

8              A.    Yes, yes I did.

9              Q.    Anything else happen besides

10   what she already described?

11             A.    No, nothing else.

12             Q.    Did you fill out any paperwork?

13             A.    I personally did not, no.

14             Q.    Did you ever go back to the

15   police station after that date?

16             A.    No.

17             Q.    Did you ever talk to any police

18   officers or anyone from the police

19   department regarding the incident after that

20   date?

21             A.    No, I didn't.

22             Q.    Has anyone approached you after

23   that date to discuss the incident with

24   you --

25             A.    No.

F. McCALLA                    19

Q.    -- someone you know or a friend or anyone like that?

A.    No.

Q.    Did anyone inquire, did the police come to your house, anything like that?

A.    No.

Q.    Did you seek any medical treatment after this incident?

A.    No, I did not.

Q.    At anytime, did any of the officers ever touch any of the children or Ms. Alethia Hamilton?

A.    No.

Q.    Is there anything that you wish to add that hasn't been discussed?

A.    Yes.  Coming inside you have a sensor light.  The morning that they came after I noticed it wasn't -- it was like unscrewed, it was unscrewed.

Q.    They unscrewed that?

A.    Yeah.

Q.    Anything else?

A.    That's it.

```
1                              F. McCALLA            20
2                  Q.    How about the cameras that are
3        located around the house?
4                  A.    Right.
5                  Q.    Do you know who installed those
6        cameras?
7                  A.    Actually, it's me.  I put it up
8        just to see what is going on inside the
9        yard.
10                 Q.    When did you do that?
11                 A.    That was like early part of
12       that year, 2006.
13                 Q.    Is that the kind of work that
14       you do?
15                 A.    No.
16                 Q.    Did you have someone come and
17       do it or you did it yourself?
18                 A.    I did it myself.
19                 Q.    The connection to the TV
20       screen, you did all of that work yourself?
21                 A.    Yeah.
22                 Q.    It shows you the outside of the
23       house?
24                 A.    Right.
25                 Q.    Does it show you anything else?
```

```
1                        F. McCALLA              21

2              A.     Just outside the house.

3              Q.     What was the reason for that?

4              A.     Just security reasons.

5              Q.     Had there been a security

6       problem?

7              A.     Breaking car glasses, yeah.

8              Q.     Someone had done that?

9              A.     Yeah.

10             Q.     Had you made a police report

11      regarding that?

12             A.     No, I don't.

13             Q.     Had anyone forcibly entered the

14      house before you installed the camera?

15             A.     No.

16                    MS. SHERWANI:  I have nothing

17             further.  Thank you for your time.

18                    (Whereupon this examination

19             concluded at 2:03 p.m.)

20

21                        _____

22                        FABIAN McCALLA

        Subscribed and sworn to
23      before me this_____day
        of_____, 2008.
24

25      _____
             Notary Public
```

22

# C E R T I F I C A T E

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF WESTCHESTER)


I, LISA DOBBO, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:


That FABIAN McCALLA, the witness whose deposition is hereinbefore set forth, was duly sworn by me, and that such deposition is a true record of the testimony given by the witness.


I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.


IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of January, 2008.


*Lisa Dobbo*

LISA DOBBO
SHORTHAND REPORTER

23

REQUESTS

Page 6          Indicate name of school in the
                Bronx.

24

## ERRATA SHEET

The following corrections, additions or deletions were noted on the transcript of the testimony which I gave in the above-captioned matter held on 1/14/08:

Page____Line____SHOULD READ:_____

REASON FOR CHANGE:_____

Page____Line____SHOULD READ:_____

REASON FOR CHANGE:_____

Page____Line____SHOULD READ:_____

REASON FOR CHANGE:_____

Page____Line____SHOULD READ:_____

REASON FOR CHANGE:_____

Page____Line____SHOULD READ:_____

REASON FOR CHANGE:_____

Page____Line____SHOULD READ:_____

REASON FOR CHANGE:_____

Page____Line____SHOULD READ:_____

REASON FOR CHANGE:_____

_____
FABIAN McCALLA

Subscribed and sworn to before me this_____day of_____, 2008.

_____
Notary Public

**'**

'90 - 10:6

**0**

00080 - 1:7
08 - 1:7

**1**

1/14/08 - 24:4
10550 - 1:14; 2:13; 4:4, 15
10601 - 1:24
11556 - 2:6
1274 - 2:6
14 - 1:4, 14
14th - 4:3, 14; 8:7
16th - 22:17
1989 - 6:5
1990 - 10:7
1:45 - 1:15

**2**

200 - 1:24
2006 - 20:12
2008 - 1:14; 21:23; 22:17; 24:23
2:03 - 21:19

**4**

4:00 - 5:17

**5**

58 - 4:2, 14; 8:7; 15:13
5:00 - 10:24

**6**

6 - 23:5
682-1888 - 1:25

**8**

8:00 - 5:17; 10:25

**9**

914 - 1:25

**A**

above-captioned - 24:4
action - 22:13
add - 19:17
additions - 24:3
address - 4:12
Address - 2:5, 11
administer - 3:11
AGE - 1:4
AGREED - 3:6, 17
Alethia - 6:17, 23; 19:14
Alex - 7:10, 14
altogether - 7:4
AND - 1:4, 9; 3:5, 16

answer - 5:7
Anthony - 7:10, 12
anyplace - 15:23
anytime - 19:12
appliance - 14:19
approached - 18:22
area - 13:7, 11
arrested - 7:20, 25
AT - 1:13
attic - 11:24; 12:2; 17:7
Attorneys - 2:5, 11
attorneys - 3:6
authorized - 3:10
Avenue - 4:3, 14

**B**

baby - 6:20; 9:12
basement - 10:14, 18
bed - 8:8, 19; 11:5; 14:21; 16:16
bedroom - 12:6; 14:10
bedrooms - 11:23; 13:23
Bedrooms - 11:24
begin - 5:7
beginning - 4:20
between - 3:6
blank - 6:13
blood - 22:14
Breaking - 21:7
broke - 16:3
broken - 15:8; 16:18; 17:5
Bronx - 6:10; 23:5
brothers - 10:18
bunk - 16:16
bursting - 8:9
BY - 1:4; 2:7, 13; 4:8

**C**

Cabinet - 13:14
cabinet - 13:16
camera - 21:14
cameras - 20:2, 6
captioned - 24:4
car - 21:7
certify - 22:8, 13
chain - 15:18
CHANGE - 24:7, 9, 11, 13, 15, 17, 19
child - 6:21
children - 6:25; 19:13
CITY - 1:8
City - 1:13; 2:12
CIV - 1:7
close - 17:15
closet - 14:22; 15:7, 10; 16:3
Corning - 19:18
completed - 5:24
concluded - 21:19
connection - 20:19
consist - 13:13
consists - 16:10
CORPORATION - 2:10
correct - 4:17
corrections - 24:3
COUNSEL - 2:10
COUNTY - 22:5
Court - 1:18
COURT - 1:2

**D**

damaged - 15:5
date - 18:15, 20, 23
daughter - 9:13
Defendant - 2:11
Defendants - 9:6; 11:18
Defendants - 1:11
deletions - 24:3
DELL - 2:4
Department - 7:21; 8:2
DEPARTMENT - 1:9
department - 18:19
depicted - 11:18
deposition - 3:8, 13; 22:10
Describe - 8:5; 11:10; 13:6; 14:18; 17:11
describe - 11:2; 14:11
described - 14:2; 16:13; 17:5; 18:10
dining - 13:7, 11, 19
discuss - 18:23
discussed - 19:17
DISTRICT - 1:2
Dobbo - 1:25; 4:6
DOBBO - 22:7, 21
DOE - 1:9
done - 21:8
door - 15:8-10; 16:3, 20; 17:7, 12
doors - 8:9; 15:7; 17:4
down - 5:8; 8:9; 12:7; 15:8; 16:3; 17:16
drawers - 15:2; 16:8
dresser - 16:5, 15
dressers - 14:21; 16:7, 9, 16
duly - 4:5; 22:10
During - 11:2

**E**

early - 20:11
East - 1:24
education - 5:23
effect - 3:12
eight - 7:15
either - 7:5
ELIZABETH - 1:3
enter - 11:14
entered - 21:13
entrance - 11:11, 13, 25; 12:4; 16:20; 17:7
entrances - 15:16
Environmental - 5:15
ERIC - 1:3
ERRATA - 24:2
ESQUIRE - 2:7, 13
ESQUIRES - 2:4
EXAMINATION - 4:8
Examination - 1:17
examination - 21:18
except - 3:17

**F**

FABIAN - 1:18; 4:2; 21:21; 22:9; 24:21
Fabian - 4:11
FICTITIOUS - 1:9
filing - 3:8
fill - 18:12
finish - 5:6
first - 8:5; 10:5
five - 16:11

Five - 7:17
floor - 8:14; 9:23; 10:10-12, 23; 11:11; 12:2; 15:4; 17:6
following - 24:3
follows - 4:7
FOR - 24:7, 9, 11, 13, 15, 17, 19
force - 3:11
forcibly - 21:13
form - 3:18; 5:25
forth - 22:10
four - 7:4; 15:24
Four - 7:5
fourteen - 6:22; 7:6
friend - 19:2
full - 4:9
furniture - 13:10; 14:19; 16:13
FURTHER - 3:16

**G**

gate - 15:12
gestures - 5:5
given - 22:11
glasses - 13:14; 21:7
GUARDIAN - 1:4
gun - 11:4
guns - 8:10, 19

**H**

Hall - 1:13; 2:12
Hamilton - 6:17; 7:8; 19:14
hand - 22:17
handcuff - 12:9
handcuffed - 8:19; 11:5
handcuffing - 12:13
handcuffs - 12:23; 13:3
Handed - 9:7
hear - 4:22
heard - 8:9
HELD - 1:13
held - 1:19; 24:4
hereby - 22:8
HEREBY - 3:5
herein - 3:7
hereinbefore - 22:10
hereunto - 22:17
high - 5:25
highest - 5:23
HINA - 2:13
Home - 5:13
hours - 5:16; 11:2
house - 8:7; 9:25; 15:13; 19:6; 20:3, 23; 21:2, 14

**I**

IN - 22:16
Inc - 1:23
incident - 7:18; 8:3; 18:19, 23; 19:10
Indicate - 23:5
Indies - 6:3
INDIVIDUALLY - 1:5
INFANTS - 1:4
inquire - 19:5
inside - 16:15, 23; 19:18; 20:8
installed - 20:5; 21:14
instructions - 4:19
interested - 22:14
iron - 15:12
IS - 3:5, 16
IT - 3:5, 16

**J**

Jackie - 9:13
Jahmarcus - 9:14
Jamaica - 6:3
January - 1:14; 22:17
Jessica - 2:17
JESSICA - 1:4
jobs - 5:21
JOHN - 1:9

**K**

Karina - 9:13
Karinas - 13:21; 14:3, 7, 10
keep - 13:14
kids - 13:22, 25; 14:2-5, 7; 16:23
kids' - 14:15; 16:12, 14, 19
kind - 17:15; 20:13

**L**

layout - 11:10
learned - 8:6
leave - 6:12
leaving - 17:23
left - 12:24; 14:14; 17:21; 18:5
light - 19:19
Lisa - 1:25; 4:6
LISA - 22:7, 21
LITTLE - 2:4
live - 10:9, 18
living - 10:3; 11:16, 20; 13:8, 19; 14:14; 15:8
located - 15:15; 20:3
lock - 15:18; 17:11, 13
locked - 15:10, 19; 16:21; 17:9
locks - 15:15, 24
looking - 8:22
Lynch - 2:17; 4:17; 10:13; 18:7
LYNCH - 1:3

**M**

main - 15:16
marriage - 22:14
married - 6:15
matter - 22:15; 24:4
McCalla - 1:18; 4:2, 11, 16; 7:10; 9:3; 21:21; 22:9; 24:21
medical - 19:9
middle - 14:10
mom - 6:20, 23
mom's - 6:12
months - 10:14
morning - 10:25; 19:19
MOTHER - 1:4
MOUNT - 1:8; 2:10
Mount - 1:13; 2:12; 4:3, 14; 7:20, 25
move - 10:5, 15
moved - 10:13
MS - 4:8; 6:12; 21:16

**N**

name - 4:9; 6:11; 7:7; 8:24; 23:5
NAMES - 1:10
NATURAL - 1:4
NEW - 1:2; 22:4

New- 1:14, 20, 24; 2:6, 13; 4:4, 15; 6:4; 22:8
next - 13:7
nine - 5:19
Notary- 1:20; 4:5; 21:25; 22:7; 24:24
noted - 24:3
nothing - 18:11; 21:16
noticed - 19:20

**O**

oath - 3:11
objections - 3:17
OF- 1:2, 4, 8; 22:4
Office- 2:5, 11
officer - 3:10, 13
officers - 8:11, 13, 16; 10:22; 13:4; 18:18; 19:13
OFFICERS- 1:9
old - 6:21; 7:12
old's - 7:7
oldest - 6:21
Oldest- 6:22
One- 1:13; 2:12; 11:13; 16:10
one - 5:8; 10:16; 11:11; 15:22
open - 16:2
Order- 1:19
outcome - 22:14
outside - 20:22; 21:2
OVADIA- 2:7; 6:12

**P**

p.m - 1:15; 21:19
pad - 15:15
Page - 23:5
Page_____Line_____
    SHOULD - 24:6, 8, 10, 12, 14, 16, 18
paperwork - 18:12
part - 20:11
parties - 3:7; 22:13
period - 10:21
person - 5:8
personally - 7:19; 18:13
photograph - 9:18, 20
picture - 9:8, 11; 13:6
place - 1:19; 8:20; 11:6, 9
Place- 2:6
Plains - 1:24
Plaintiff - 1:18
Plaintiffs - 1:6; 2:5
plastic - 12:16
Police - 7:20; 8:2
POLICE- 1:9
police - 8:6; 10:22; 17:25; 18:15, 17-18; 19:6; 21:10
Post- 1:24; 2:5, 11
presence - 8:6
problem - 21:6
proceed - 8:17
proceeded - 8:18
provide - 6:13
Public- 1:20; 4:6; 21:25; 22:7; 24:24
pull - 12:7; 17:13
pulled - 12:17
pursuant - 1:18
put - 15:18; 20:7

**R**

READ- 24:6, 8, 10, 12, 14, 16,

18
ready - 17:2
really - 15:19
REASON- 24:7, 9, 11, 13, 15, 17, 19
reason - 21:3
reasons - 21:4
Reckson- 2:6
record - 4:10, 13; 22:11
refer - 9:2
regarding - 18:19; 21:11
related - 22:13
remember - 6:11
report - 21:10
Reporter- 1:25; 22:7
reporter - 5:7
REPORTER- 22:22
REPORTING- 1:23
REQUESTS- 23:3
reserved - 3:18
residing - 4:2
respective - 3:7
Rhiana- 7:11, 16
RICARDO- 1:5
RICHARD- 1:9
Road- 1:24
room - 11:16, 21; 13:8, 19-21, 25; 14:8, 14-15, 18, 23; 15:6, 8; 16:6, 12, 14, 19
rooms - 13:18; 14:11
Roosevelt- 1:13; 2:12
Rosalie- 7:8; 9:14; 17:2

**S**

school - 5:25; 6:7, 17:3; 23:5
screen - 20:20
screwed - 17:17
screws - 17:15
sealing - 3:7
search - 11:20; 13:16; 14:23
searching - 8:20; 11:5, 7, 23
second - 9:23; 10:22; 11:12; 17:6
Second- 9:24
security - 21:4
see - 8:9, 11; 20:8
seek - 19:9
sensor - 19:19
SERVICE- 1:23
set - 22:10, 17
seven - 8:15; 10:14
SHEET- 24:2
SHERWANI- 2:13; 4:8; 21:16
shirt - 9:16
Shorthand- 22:7
SHORTHAND- 22:22
show - 9:5; 20:25
shows - 13:7; 20:22
shut - 17:17
signed - 3:9, 12
SIMON- 1:3
sister - 9:12; 13:21
sisters - 10:17
situated - 15:24
six - 8:15; 10:13; 16:10
sleeping - 8:9; 16:24
socialized - 7:24
someone - 19:2; 20:16
Someone- 21:8
son - 9:14
sons - 9:22
sorry - 10:12
South- 4:3, 14; 8:7
SOUTHERN- 1:2

Square- 1:13; 2:12
squeezing - 12:22
ss - 22:4
staircase - 12:7
stand - 14:21; 16:17
state - 4:9, 12
STATE- 22:4
State- 1:20; 22:8
STATES- 1:2
station - 17:21; 18:2, 5, 16
stay - 10:22
STEPHANIE- 2:7
still - 10:3
STIPULATED- 3:5, 16
striped - 9:15
Subscribed- 21:22; 24:22
sworn - 3:10, 12; 4:5; 21:22; 22:10; 24:22

**T**

table - 13:15
technician - 5:15
television - 16:17
testified - 4:6
testimony - 4:17; 22:11; 24:4
THE- 1:4, 8
THEIR- 1:4
Third- 5:25
third - 10:9, 11
this_____day - 21:23; 24:22
Three- 7:3
three - 7:3; 13:23
tight - 12:17; 13:3
together - 7:2; 14:16
tore - 17:16
touch - 12:12; 19:13
training - 6:7
transcript - 24:3
treatment - 19:10
Trial- 1:17
trial - 3:18
true - 22:11
TRUE- 1:10
trying - 6:11
TV- 14:21; 20:19
twelve - 7:13
Two- 14:21
two - 9:22; 14:11; 16:7, 16

**U**

UNDER- 1:4
Uniondale- 2:6
UNITED- 1:2
UNKNOWN- 1:10
unscrewed - 19:21
up - 12:18; 17:2, 14; 20:7

**V**

VERNON- 1:8; 2:10
Vernon- 1:13; 2:12; 4:4, 15; 7:20, 25

**W**

wait - 5:6
waived - 3:9
waiving - 8:19; 11:4
wall - 9:19
Wartburg- 5:13
wearing - 9:15

West- 6:3
WESTCHESTER- 22:5
Westchester- 1:23
WHEREOF- 22:16
White- 1:24
white - 12:16
wise - 14:19
wish - 19:16
WITNESS- 22:16
witness - 22:10
words - 5:3

**Y**

yard - 20:9
year - 7:6, 18; 8:2; 20:12
years - 5:20; 6:22; 7:13, 15, 17
YORK- 1:2; 22:4
York- 1:14, 21, 24; 2:6, 13; 4:4, 15; 6:4; 22:8
yourself - 20:17, 20