UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ELIZABETH LYNCH, SIMON LYNCH, ERIC LYNCH,
infants, under the age of 14, by their mother and natural
guardian JESSICA LYNCH and JESSICA LYNCH
individually and RICHARDO LYNCH,

                                                    Plaintiff(s),    08 CV 00080

   -against-
                                                                 (WCC)

CITY OF MOUNT VERNON, THE MOUNT VERNON
POLICE DEPARTMENT AND POLICE OFFICERS
"JOHN DOE", "RICHARD ROE", FICTITIOUS NAMES,
TRU NAMES UNKNOWN,

                                                  Defendant(s).
------------------------------------------------------------------X
ROSLEE HAMILTON, an infant under the age of 14 years
By her father and natural guardian, FABIAN McCALLA,
and FABIAN McCALLA,

                                                   Plaintiffs,    08 CV 00083

   -against-
                                                                 (WCC)

CITY OF MOUNT VERNON, THE MOUNT VERNON
POLICE DEPARTMENT and POLICE OFFCIERS
"JOHN DOE", "RICHARD ROE", fictitious names,
true names unknown,

                                                  Defendants.
------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW**

## PRELIMINARY STATEMENT

"Given the requirement to consider surrounding circumstances, we recall that this Court has repeatedly acknowledged the dangerous nature of the drug trade and the genuine need of law enforcement agents to protect themselves from the deadly threat it may pose." <u>Soichet v. Toracinta</u>, 111 F.3d 124, 124 (2d Cir. 1997) (Table, text in WESTLAW, NO. 95-2771) citing <u>United States v. Alexander, 907 F.2d 269, 273 (2d Cir.1990)</u>

"The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent, and people like Rettele and Sadler unfortunately bear the cost. Officers executing search warrants on occasion enter a house when residents are engaged in private activity; and the resulting frustration, embarrassment, and humiliation may be real, as was true here. When officers execute a valid warrant and act in a reasonable manner to protect themselves from harm, however, the Fourth Amendment is not violated". <u>Los Angeles vs. County California et al. v.max Rettele et al.</u> 550 U.S. ___2007

"It is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant". The majority view rejecting a protocol requirement makes good sense as there is no principle in the law that requires law enforcement officers to limit their investigative techniques ex ante, before conducting any kind of search. *("Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that ... search warrants also must include a specification of the precise manner in which they are to be executed.")* <u>Dalia v. United States</u>, 441 U.S. 238, 257 (1979).

In this apartment, was the potential for firearms and narcotics. The Judge that issued the warrant order not only relied on an affidavit from a police officer - detailing conversations with a confidential informant she deemed reliable as the location the CI gave information about was a location that was currently under investigation - but also the Judge herself interviewed the CI.

According to the Plaintiff's own testimony, the Officers herein did not physically or verbally abuse anyone in the home that day. No one was injured as a result of handcuffing. Areas within the parameter of the search warrant were searched with some resulting damage as a result of many of those areas being mysteriously locked including rooms containing sleeping children. The officers encountered an apartment with many locked doors and security cameras connected to a television unit in the home. Based upon the totality of these circumstances the officers did not violate the constitutional rights of the Plaintiffs herein and at the very least their actions were objectively reasonable entitling them to summary judgment and qualified immunity.

## POINT I

## THE WARRANT WAS LEGAL

Plaintiff essentially asserts that the warrant was not issued based upon probable cause as the police officers relied on the information of one confidential informant without confirming the information given. However, the affidavit reads that - "CI provided information of drug activity at locations that were currently under investigation by this department", indicating that the Mount Vernon Police Department was investigating that location before the CI stepped forward (See Exhibit C of Defendant's Moving Papers). Indeed the warrant goes on to state that because of this fact, this proved the CI's "reliability and credibility regarding illegal activity". So that, Plaintiffs are incorrect when they state that the police department relied on the statements of the CI without confirming the information.

Further, it should be noted that Judge Brenda Dowery-Rodriguez actually interviewed the CI before issuing the warrant order herein. This fact coupled with the affidavit from Police Officer Smith, gave her the probable cause to issue the warrant, so that there is no argument that the warrant was invalid.

## POINT II

## THE WARRANT WAS VALID SO THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

Under the Fourth Amendment, the Warrant Clause requires that, absent certain exceptions, police obtain a warrant from a neutral and detached magistrate to search a person's home. See Franks v. Delaware, 438 U.S. 154, 164 (1978). A magistrate issuing a warrant must make a probable cause determination based on the "totality of the circumstances," by making a common sense decision based on the information set forth in the affidavit before him. See Illinois v. Gates, 462 U.S. 213, 238 (1983) (where an informant's tip corroborated by a sworn statement by an affiant was sufficient probable cause for a warrant.) A "no knock" warrant may be obtained to search for contraband drugs. See Richards v. Wisconsin, 520 U.S. 385, 395 (1997) (holding that "knock and announce" when executing a search warrant is not needed where officers reasonably suspect that evidence might be destroyed).

The plaintiff's illegal search claim fails because defendants had a facially valid warrant based on probable cause. The officers' entry into and search of the plaintiffs' residence was lawful pursuant to a valid search warrant approved by a Mount Vernon City Court Judge. The Judge's decision was based on Officer Smith's and Detective Dimase' sworn affidavit as to their conversations with the CI, as well as the CI's statement to the Judge[1]. In addition, the "no knock" provision was approved because

---

[1] It should be noted that on December 14, 2006 before Judge Dowery Rodriguez issued the warrant order she interviewed the CI at issue with a stenographer present. Such proceeding is sealed so that Defendants could not access it to make it a part of this reply. Had Defendants had the transcript of that sealed proceeding we would

narcotics could be disposed of quickly. Thus, the entry into and search of the plaintiffs' apartment was lawful pursuant to a valid search warrant and did not violate their constitutional rights.

Even should plaintiffs contend that the warrant was issued on less than probable cause, their arguments would fail. A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. Rivera v. United States, 928 F.2d 592, 602 (2d Cir.1991). Where a magistrate has found that an affidavit presented to him/her showed that there was probable cause for the issuance of a warrant, the person challenging the affidavit must make a "substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard to the truth, made a false statement in his affidavit and that this false statement was "necessary to the finding of probable cause." Rivera, 928 F.2d at 604 (quoting Franks, 438 U.S. at 155-56). Plaintiffs have offered no evidence that the affiant, police officer Smith and/or Detective Dimase made a false statement to the Judge. Plaintiffs' conclusory statement that the officers "illegally entered and searched" their home and that the warrant is invalid, is not enough to overcome the fact that the Complaint fails to state a cause of action or summary judgment on this claim.

## POINT IV

### THE METHOD UPON WHICH THE OFFICERS CARRIED OUT THE SEARCH WARRANT WAS REASONABLE

**A.** *Damage to the apartment does not rise to the level of a constitutional violation*

Fourth Amendment does not hold officers to higher standard than that applicable to "no-knock" entries when "no-knock" entry results in destruction of property. U.S.C.A. Const. Amend. 4. U.S. v. Ramirez, 118 S. Ct. 992 (U.S. 1998).

---

have argued that this Honorable Court take judicial notice of such and allow it to be considered under the Defendant's 12(c) motion.

Lawfulness of "no-knock" entry does not depend on whether property is damaged in course of entry. U.S.C.A. Const. Amend. 4. U.S. v. Ramirez, 118 S. Ct. 992 (U.S. 1998).

It is well recognized that "officers executing search warrants on occasion must damage property in order to perform their duty." Dalia v. United States, 441 U.S. 238, 258, 99 S.Ct. 1682, 1693-94, 60 L.Ed.2d 177 (1979); Tarpley v. Greene, 684 F.2d 1, 9 (D.C.Cir.1982). Indeed, Congress has made specific provisions for the use of force in certain instances to gain entrance into locked premises or interior rooms. See 18 U.S.C. § 3109; Simons v. Montgomery County Police Officers, 762 F.2d 30, 33 (4th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). It has been said of section 3109 that it "does not prohibit action, it specifically permits violence." White v. United States, 346 F.2d 800, 803 (D.C.Cir.1965), cert. denied, 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 529 (1966). See Payne v. United States, 508 F.2d 1391, 1394 (5th Cir.), cert. denied, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975). Indeed, this Circuit has held that it is well recognized that "officers executing search warrants on occasion must damage property in order to perform their duty." Cody v. Mello, 59 F.3d 13, 16 (2d Cir.1995) (internal citation omitted). Before any due process liability can be imposed for property damage occurring in a lawful search, it must be established that the police acted unreasonably or maliciously in bringing about the damage. See Notice v. Koshes, 386 F.Supp.2d 23, 27 (D.Conn.2005); Stone v. Agnos, 960 F.2d 893, 895-96 (9th Cir.1992); Bergquist v. County of Cochise, 806 F.2d 1364, 1369 (9th Cir.1986). Mere negligence is not enough. Daniels v. Williams, 474 U.S. 327, 333-34, 106 S.Ct. 662, 666-67, 88 L.Ed.2d 662 (1986).

The fact of the matter is construing the facts in favor of the Plaintiff, if the officers did break doors and locks such was reasonable given the totality of the circumstances. The facts establish that the officers were looking for weapons and

narcotics - items which could be stashed in different rooms and in different places like closets and the like. It should also be noted that the officers encountered a security cameras around the house that the Plaintiffs had connected to a television inside the house. Plaintiffs indicated that such was for security purposes however one must bear witness that to a reasonable police officer in that situation such an elaborate security system may have an effect on his/her assessment of the totality of the circumstances during that search. This is not information beyond the record as Plaintiff Fabian McCalla testified about this security system at his 50-H hearing. His specific testimony with regard to these security cameras and internal television surveillance equipment is as follows:

> Q. How about the cameras that are located around the house?
> A. Right
> Q. Do you know who installed those cameras?
> A. Actually, its me. I put it up just to see what is going on inside the yard.
> Q. When did you do that?
> A. That was like early part of that year 2006
> Q. The connection to the TV screen, you did all of that work yourself?
> A. Yeah.
> Q. It shows you the outside of the house?
> A. Right.
> Q. Does it show anything else?
> A. Just outside the house.
> Q. What was the reason for that?
> A. Just security reasons.

(See Relevant portion of the testimony of Plaintiff of Fabian McCalla annexed hereto as Exhibit A)

Moreover given the interplay between section 3109 and the Fourth Amendment, in addition to the fact that the officers had secured and acted that day pursuant to a **valid** search warrant, it is objectively reasonable that if the officers did break into locked doors and ransack the apartment in search of narcotics that they believed their actions did not violate any clearly established right of the Plaintiffs. Indeed, breaking doors[2] where items officers are searching for could be and searching drawers where

narcotics could be by emptying the contents thereof, are not constitutional rights or laws that are clearly established. In this regard, the officers are entitled to qualified immunity.

**B.    *Execution of the warrant when children were at home not a violation***

Plaintiff cites no case law for the proposition that police cannot execute a warrant in the presence of children. There is no allegation that the police harmed or threatened the children in any way. Under these circumstances, there was nothing unreasonable in the decision to execute the warrant at a time when the police reasonably believed plaintiff would be at home. (See <u>Martin v. Rodriguez</u>, 154 F.Supp.2d 306, (D.Conn 2001).

**C.    *The detentions were reasonable***

Plaintiffs' assertions that their detention during the duration of the search was unreasonable are without merit. The Supreme Court has held that a search warrant for a house "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." <u>Michigan v. Summers, 452 U.S. 692, 705 (1981)</u>; *see also* <u>Rivera v. United States, 928 F.2d 592, 606 (2d Cir.1991)</u>. The "risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." <u>Summers, 452 U.S. at 705</u>. The detention of the occupants must be limited, however, and must be "substantially less intrusive" than an arrest. *Id.* at 702. "Thus, a detention ... is constitutional so long as the means used to effectuate it are as minimally intrusive as possible to achieve the end of securing the home, preventing flight from the premises and ensuring the safety of officers and occupants." <u>Barlett v. City of New York, 03-CV-1961, 2005 WL 887112, at *8 (E.D.N.Y. Feb 11, 2005)</u>, citing <u>United States v. Pichardo, 92-CR-354, 1992 WL 249964, at *5 (S.D.N.Y. Sept. 22, 1992)</u>. The circumstances surrounding the detention must be viewed "through the eyes of a

reasonable and cautious police officer on the scene guided by his experience and training." <u>United States v. Barlin</u>, 686 F.2d 81, 87 (2d Cir.1982). Furthermore, officers have authority to use handcuffs during the duration of a search for contraband. <u>Meuhler v. Mena</u>, 544 U.S. 93, 93 (2005).

## POINT V

### PLAINTIFF'S SELF SERVING RECEIPT FOR REPAIRS

Plaintiffs included an invoice for the cost of the repair of a number of doors which were alleged to have been damaged by the officers on the day in question. It should be noted that there is no damage indicated on the receipt and the invoice supplied by Plaintiffs does not state why the replacement is being made. Plaintiff has not submitted proof in admissible form like photographs to substantiate their claim of damages. There is no affidavit from anyone that these are real damages or that the replacement is as a result of police activity.

Moreover the self serving receipt includes items which are not a part of this lawsuit as the Plaintiffs herein lived on the second floor and the basement so any damage to any first floor doors is beyond the scope of this lawsuit and should be excluded.

Finally, if the damage to the doors on the second floor and the basement were caused by the officers, such does not rise to a violation of a constitutional right and does not make the officer's search unreasonable in light of the totality of the circumstances (See Argument Points above).

## CONCLUSION

For the foregoing reasons we respectfully request that he Plaintiff's complaint be dismissed pursuant to Fed. R. Civ. P. 12(c) for failure to state a cause of action and/or pursuant to (56)(b) for summary judgment granting qualified immunity to all unnamed officers herein as there was at least arguable probable cause upon which the Officers would believe that their actions did not violate Plaintiff's constitutional rights.

Dated: Mount Vernon, New York
April 24, 2008

                                   Respectfully submitted
                                   Helen M. Blackwood
                                   Corporation Counsel

                                   By: *[signature]*
                                   NICHELLE A. JOHNSON (NAJ7688)
                                   Assistant Corporation Counsel

                                   1 Roosevelt Square
                                   Mount Vernon, New York 10550
                                   (914) 665-2366
                                   Counsel for the Defendants

**ATTACHMENT "A"**
**FABIAN MCCALLA'S TRANSCRIPT**
**PAGES 20 & 21**



```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------X
ELIZABETH LYNCH, SIMON LYNCH, ERIC LYNCH,
INFANTS, UNDER THE AGE OF 14, BY THEIR
MOTHER AND NATURAL GUARDIAN JESSICA LYNCH
AND JESSICA LYNCH INDIVIDUALLY AND
RICARDO LYNCH,

                    Plaintiffs,

         -against-             08 CIV 00080

CITY OF MOUNT VERNON, THE MOUNT VERNON
POLICE DEPARTMENT AND POLICE OFFICERS
"JOHN DOE", "RICHARD DOE", FICTITIOUS
NAMES, TRUE NAMES UNKNOWN,

                    Defendants.
-------------------------X

HELD AT:       Mount Vernon City Hall
               One Roosevelt Square
               Mount Vernon, New York 10550
               January 14, 2008
               1:45 p.m.
```

Examination before Trial of the Plaintiff, FABIAN McCALLA, pursuant to Court Order, held at the above time and place before a Notary Public of the State of New York.

J & L REPORTING SERVICE
of Westchester, Inc.
200 East Post Road
White Plains, New York 10601
(914) 682-1888
Lisa Dobbo, Reporter

```
1                           F. McCALLA                    20
2              Q.   How about the cameras that are
3    located around the house?
4              A.   Right.
5              Q.   Do you know who installed those
6    cameras?
7              A.   Actually, it's me.  I put it up
8    just to see what is going on inside the
9    yard.
10             Q.   When did you do that?
11             A.   That was like early part of
12   that year, 2006.
13             Q.   Is that the kind of work that
14   you do?
15             A.   No.
16             Q.   Did you have someone come and
17   do it or you did it yourself?
18             A.   I did it myself.
19             Q.   The connection to the TV
20   screen, you did all of that work yourself?
21             A.   Yeah.
22             Q.   It shows you the outside of the
23   house?
24             A.   Right.
25             Q.   Does it show you anything else?
```

```
 1                        F. McCALLA                    21
 2          A.    Just outside the house.
 3          Q.    What was the reason for that?
 4          A.    Just security reasons.
 5          Q.    Had there been a security
 6    problem?
 7          A.    Breaking car glasses, yeah.
 8          Q.    Someone had done that?
 9          A.    Yeah.
10          Q.    Had you made a police report
11    regarding that?
12          A.    No, I don't.
13          Q.    Had anyone forcibly entered the
14    house before you installed the camera?
15          A.    No.
16                MS. SHERWANI:  I have nothing
17          further.  Thank you for your time.
18                (Whereupon this examination
19          concluded at 2:03 p.m.)
20
21                              _____
                                      FABIAN McCALLA
22
23    Subscribed and sworn to
      before me this 13th day
24    of February, 2008.
25    _____
            Notary Public
```

DESMOND BONAR
Notary Public - State of New York
NO. 01BO6174891
Qualified in Westchester County
My Commission Expires 10/1/2011